Thad M. Scroggins, Esq., SBN 299453
**THE LAW OFFICE OF THAD M. SCROGGINS**
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
Tel: (626) 993-6715
Fax: (626) 226-5594
thad@scrogginsesq.com

Attorneys for Plaintiff, ENGAGE BDR, LLC and Plaintiff, KENNETH KWAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ENGAGE BDR, LLC, a California limited liability company; KENNETH KWAN, an individual;<br><br>Plaintiff,<br>v.<br><br>GODADDY INC., a Delaware corporation; DOES 1 through 10, inclusive;<br><br>Defendants. | Case No. 2:21−cv−02014−JVS−AS<br><br>Assigned to: Hon. James V. Selna<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: September 27, 2021<br>Time: 1:30 p.m.<br>Courtroom: 10C |

Plaintiff, ENGAGE BDR, LLC (hereinafter referred to as "Engage") and Plaintiff, KENNETH KWAN, on behalf of Engage (hereinafter referred to as "Mr. Kwan") (hereinafter collectively referred to as the "Plaintiffs"), by and through their undersigned attorney, submit this, their Opposition to Defendant, GODADDY INC.'s (hereinafter referred to as Defendant) Motion to Dismiss and state as follows:

## I. INTRODUCTION

Each of the three causes of action in Plaintiffs' First Amended Complaint ("First Amended Complaint" or "FAC") sets forth sufficient facts to support the Plaintiffs' right to relief and are more than adequate to defeat the Defendant's instant Motion to Dismiss.

## II. BACKGROUND OF THE ACTION

Plaintiffs registered the domain name hahajk.com with Defendant GoDaddy for the first time on July 2, 2009. *See* Declaration of Ted Dhanik ("Dhanik Decl.") ¶ 3; *See* FAC ¶ 15. Because the domain name represents a significant source of revenue for the Plaintiffs, they were very careful to renew the registration for the domain name with Defendant. *See* Dhanik Decl. ¶ 4. Such renewals of the aforesaid Domain Name were up to and including July 2, 2021. *See* Dhanik Decl. ¶ 5; *See* FAC ¶¶ 16, 17.

In December 2020, Plaintiffs first learned that due to a security breach Plaintiffs, (as well as many other domain registrants) had lost the domain, which had been transferred to an unknown third party. *See* Dhanik Decl. ¶ 6; *See* FAC ¶ 20. Defendant has failed and refused to inform Plaintiffs as to the identity and location of the aforesaid third party, and the specific details involving the unauthorized transfer, despite their demand for that information. *See* Dhanik Decl. ¶ 7.

Industry journals confirm the allegation in Plaintiffs' First Amended Complaint and state that the security breach was undiscovered by Defendant until April 23, 2020, six months after the breach, although, as set forth in the First Amended Complaint, Plaintiffs did not discover the transfer of their domain until December 2020. This action was commenced by Plaintiffs within months after that discovery, on March 4, 2021.

///

## III. THE LEGAL STANDARD

Pursuant to Federal Rules of Procedure 8(a)(2), a proper Complaint requires a short and plain statement of the claims showing the pleader is entitled to relief. While specific facts are not necessary to be alleged, a complaint is required to state sufficient factual matter accepted as true to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Ad. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As demonstrated below, all three causes of action contained in Plaintiffs' First Amended Complaint meet this standard.

## IV. PLAINTIFFS' CLAIMS ARE NOT TIME BARRED

### A. The Purported Universal Terms of Service

Plaintiff first registered its domain name with Defendant on July 2, 2009. *See* Dhanik Decl. ¶ 3; *See* FAC ¶ 15. There is absolutely no evidence that the alleged Universal Terms of Service (hereinafter "Universal Terms") were a part of the contract which Plaintiff entered on that date, nor as to if there were any such Universal Terms on that date, as to of what they consisted at that time. Notably, Defendant's Motion, at page 5 thereof, asserts that the Universal Terms have been in existence since "at least 2010". Plaintiffs' contract was entered on July 2, 2009, before that date.

Whether or not Plaintiffs were properly advised as to, and whether they could possibly be bound by, Universal Terms that were created subsequent to when Plaintiff entered the contract is an issue of fact, for which no evidence has been provided, other than an unsupported statement that such Universal Terms existed in 2014 and 2016.

Were Plaintiffs properly advised as to the Universal Terms prior to the renewal of their contract with Defendant? How were Plaintiffs purportedly advised as to the new Universal Terms when they renewed their contract with Defendants? Merely stating that such Universal Terms were noted in the receipt for the renewal does not answer these

///
///
///

questions, nor prove that Plaintiffs are subject to those Universal Terms[1]. All of these are facts which Plaintiffs are entitled to explore and have the trier of fact determine.

**B. The Purported Contractual Limitations Period is Not a Bar to Plaintiffs' Causes of Action**

Aside from whether the Universal Terms, (including the limitation period which was not in the original contract entered by Plaintiff) are binding upon Plaintiffs, it is also evident that the alleged one-year contractual limitations period is not binding upon Plaintiffs for an additional reason. Plaintiffs asserted sufficient facts in the FAC to evidence that their claims did not accrue more than one year prior to the filing of this action. Paragraph 19 of the FAC states that "19. The aforesaid security breach lasted for a period of approximately six (6) months before detection by Defendant's security team on April 23, 2020." *See* FAC ¶ 19. Paragraph 20 states that Plaintiff did not discover the transfer of the domain for an additional 8 months, until December 2020. *See* Dhanik Decl. ¶ 6; *See* FAC ¶ 20.

Even giving Defendant the benefit of the doubt, as alleged in the Complaint, the breach was discovered, at the earliest, by Defendant on April 23, 2020. One year from that date is April 23, 2021. Accordingly, Plaintiffs' cases of action are timely. Defendant's argument that Plaintiff should be tied to the date that the breach took place (even though Plaintiffs stated in the FAC that they did not learn of it until a year later) is belied by the fact that even Defendant did not learn of the breach until less than a year ago. If necessary to bolster Plaintiffs' allegations, this Court can take judicial notice of the many industry articles which confirmed that no one was aware of the breach until April 23, 2020. At least Plaintiffs should be entitled to conduct discovery on this issue as to when who knew what about the breach and transfer.

///

---

[1] Plaintiffs did not 'fail' to attach the Universal Terms to the FAC. Plaintiffs were not in possession of the Universal Terms prior to delivery of same attached to the instant Motion filed by Defendant; indeed, such Universal Terms were not a part of the original contract.

Plaintiffs did not 'omit' the date of the security breach in the FAC as claimed by Defendant in its Motion at pages 10-11. Paragraph 18 of the Amended Complaint states: "18. On or about October 19, 2019, Defendant experienced a security breach that affected approximately 28,000 customer's hosting accounts including Mr. Kwan's account in which he purchased and held the Domain Name." *See* FAC ¶ 18. This did not 'contradict' the original Complaint, but merely added the date of Plaintiffs' discovery of that breach to the FAC, putting Defendant on clear notice as to the application of the benefit of discovery rule exception to the alleged period of limitations. This was not 'artful pleading' nor 'strategic omission' as Defendant's Motion at page 10 alleges. It was an elaboration on the claims to put Defendant more clearly on notice as to Plaintiffs' causes of action.

Each recognized element for the application of the discovery rule IS applicable to Plaintiffs' causes of action. Not only was the breach difficult to detect (even Defendant did not detect the breach for six months), Defendant was in a far superior position to know of the breach (and did know of the breach eight months prior to Plaintiffs). Defendant had reason to know that Plaintiffs remained ignorant as to the breach, and therefore, the claim accrued when the Plaintiffs discovered, or could have discovered, the facts essential to their causes of action. *Gabriel Technology Corp. v. Qualcomm Inc.*, 857 F.Supp.2d 997, 1010 (S.D. Cal. 2012). The fact that it was difficult to discover the breach is clear in the allegations that it took Defendant itself six months to discover the breach to its system by third parties.

Plaintiffs stated that they did not learn about the breach until months later, evidence that Defendant did not immediately inform them of the breach. Defendant was put on notice, but did not place Plaintiffs on notice, of the breach many months before Plaintiffs discovered the breach. In any event, whether reasonable diligence was exercised in discovering the breach is a question of fact. *Tessara, Inc. v. Toshiba Corp.*, 2019 WL 5395158. *21 (N.D. Cal. 2019).
///

Whether or not the limitations period would be found to be reasonable and enforceable under the facts of this case is also a determination that would need to be made after discovery of the facts, beginning with the fact of whether, and when, Plaintiffs may have been made aware of and agreed to the Universal Terms, and ending with a determination of when the breach was discovered, all as detailed above.

## V. PLAINTIFFS' FAC STATES CLAIMS UPON WHICH RELIEF SHOULD BE GRANTED

### A. Plaintiffs' Breach of Contract Claim is Sufficient to Withstand Dismissal

In the FAC, Plaintiffs have pled the existence of a contract, Plaintiffs' performance of the contract, Defendant's breach of the contract and damages to Plaintiff as a result of that breach, which is all they were required to do.

In addition to the facts stated above, the allegations of the FAC specifically related to the breach of contract claim include the following:

> "18.  On or about October 19, 2019, Defendant experienced a security breach that affected approximately 28,000 customer's hosting accounts including Mr. Kwan's account in which he purchased and held the Domain Name.
> 19.  The aforesaid security breach lasted for a period of approximately six (6) months before detection by Defendant's security team on April 23, 2020.
> 20.  On or about December 22, 2020, Mr. Kwan discovered that GoDaddy had transferred the Domain name out of Mr. Kwan's account to a third party without his authorization or approval.
> 24. Plaintiffs fully performed all of their obligations pursuant to the aforesaid Agreement.
> 25.  Defendant did not fulfill its obligations to Plaintiffs pursuant to the terms of the aforesaid Agreement.
> 26.  Defendant breached the aforesaid Agreement by transferring the Domain name out of Mr. Kwan's account to a third party without his authorization or approval.
> 27.  Defendant breached the aforesaid Agreement by failing to provide adequate security for Mr. Kwan's hosting account and the Domain Name.
> 28.  Defendant breached the aforesaid Agreement by failing to provide adequate security mechanisms to protect the Domain Name from an unauthorized transfer to a third party.

> 29. Defendant breached the aforesaid Agreement by failing to contact Mr. Kwan to obtain authorization to transfer the Domain Name to a third party.
> 30. Defendant breached the aforesaid Agreement by failing to contact Mr. Kwan to verify any request to transfer the Domain Name to a third party.
> 31. Defendant breached the aforesaid Agreement by failing to adequately warn Mr. Kwan of the possibility of an unauthorized transfer of the Domain Name to a third party."

*See* FAC ¶¶ 18-31. The cases cited by Defendant on this Point are clearly distinguishable, as noted in *Strategic Partners v. Vestagen*, 2016 WL 10611186. In *Strategic*, the Court distinguished Donavan and held: "Unlike the Donohue plaintiff, Vestagen does not allege an implied promise as an express contract term." The breaches of contract described in Plaintiffs' FAC, to wit, the complete and utter failure of the purpose of the contract because of Defendant's defaults (i.e., the registration and safeguard of Plaintiffs' domain), is not an implied promise in the contract, but is so intrinsic to the entire contract that Defendant's argument as to alleging a specific provision of the contract has no application in the case at bar and does not support the dismissal of the FAC.

### B. Plaintiffs' Negligence Claim is Also Sustainable

The actions alleged in Plaintiffs' FAC concerning Defendant's negligence include, but are not limited to, the failures by Defendant "…to contact Mr. Kwan to obtain authorization to transfer the Domain Name to a third party… to contact Mr. Kwan to verify any request to transfer the Domain Name to a third party… to adequately warn Mr. Kwan of the possibility of an unauthorized transfer of the Domain Name to a third party…" and "to otherwise exercise due care with respect to the matters alleged in this First Amended Complaint." *See* FAC ¶ 40.

These negligent acts of Defendant are independent from the contractual duties owed to Plaintiffs in that the sale/transfer of Plaintiffs' domain without Plaintiff's knowledge or consent is not contemplated by the parties' contract. In addition, it appears that Defendant's acts surrounding such transfer included deceit in that Plaintiffs

were not notified of, and had to themselves learn of, the unauthorized access to Defendant's hosting accounts despite Defendant's prior knowledge of same.

The information concerning this cause of action is largely within the knowledge and control of Defendant and Plaintiff should therefore, at the very least, be permitted to conduct discovery concerning these issues. Deceit is a recognized exception to the maintenance of a tort claim where there was also a contractual relationship. *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal.App.4th 1036, at *14, where the Court held that where a contract exists:

> "…[R]ecovery in tort is not permitted unless: " '(1) [T]he breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages."

Plaintiffs have alleged sufficient grounds and substantial harm to sustain their negligence cause of action in the FAC.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

The Third Cause of Action in Plaintiffs' FAC asserts a claim for breach of the implied covenant of good faith and fair dealing. In *Fuhu, Inc. v, Toys 'R' Us,* 2013 U.S. Dist. LEXIS 196563 (S.D. Cal. 2013), the Court noted that:

> "California law implies the covenant of good faith and fair dealing in every contract to ensure one contracting party does not unfairly frustrate the other party's right to receive the benefits of their agreement."

While the facts of that case are distinguishable from those in the case at bar, the policy stated is applicable. The entire purpose of the parties' contract failed due to Defendant's failure to act in accord with good faith and fair dealing. Whether that failure to act was occasioned by Defendant's failure to have appropriate safeguards in

8
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

place to protect Plaintiffs' domain, Defendant's failure to obtain Plaintiffs' authorization or approval prior to the transfer of Plaintiffs' domain, or Defendant's failure to properly monitor its accounts, they all resulted in the loss of Plaintiffs' benefit of the bargain under the parties' contract. Defendant's arguments for dismissal of this cause of action ignore that extremely dispositive fact.

Not only was the obligation to protect the domain so clearly indispensable to effectuate the intent of the parties and necessarily within the contemplation of the parties so as to be unnecessary to express in the contract (without the domain there would be no need for the contract), but such implied covenants were a legal necessity to the survival of the parties' contract. The promises to protect the domain from third parties would necessarily have been included in the contract had the subject been contemplated and at the very least can be inferred by the terms of the contract. The unauthorized transfer of the domain by Defendant was not contemplated in the contract. Therefore, all the parameters set forth in *Spiegler v. Home Depot U.S.A., Inc.*, 552 F.Supp.2d 1036, (C.D. Cal. 2008) for maintaining a cause of action for breach of implied covenant of good faith and fair dealing have been met.

Without such implied terms, the express terms of the parties' contract are meaningless as such contract would not exist. Those implied obligations are tied to the contract, and do not vary express terms of the contract. *Spiegler, Id*.

Defendant argues that it had discretion not to transfer domain names. *See* Defendant's Motion, page 20, lines 7 – 13. Such discretion does not grant to Defendant the right to transfer a domain name without the consent and approval of the owner of that domain. The two acts are completely different, to the extent that IF Defendant had properly exercised its discretion here this action would not have been necessary, BUT Defendant did not do so.

From all the allegations of the FAC taken as a whole, it is evident that Plaintiffs have alleged that Defendant failed to discharge its responsibilities by consciously and deliberately permitting the transfer of Plaintiffs' domain without informing Plaintiffs and

without Plaintiffs' knowledge or consent. It is implicit that Defendant's failure to protect the domain was a conscious and deliberate act which did indeed completely frustrate the contract that it had with Plaintiffs. Furthermore, once Defendant learned of the hacking of its site, it consciously and deliberately did not inform Plaintiffs of same. Such failure to notify was clearly a conscious and deliberate failure to act.

## VI. THE RIGHT TO AMEND

In the unlikely event that this Court should find any merit to Defendant's arguments in the Motion to Dismiss, Plaintiffs respectfully request the right to file and serve a Second Amended Complaint, in which additional facts as to each cause of action will be asserted, if necessary. Fed'l. R.C.Proc. 15(a)(2). *Whitesides*, supra, at *25.

## VII. JURY DEMAND

There is serious doubt as to the applicability of the purported Universal Terms in which Defendant claims the right to jury was waived (see Point IV, above). Until that determination is made, the arguments concerning the Plaintiffs' demand for jury trial should be permitted to subsist.

## VIII. CONCLUSION

Based upon all the foregoing, it is respectfully submitted that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint be denied.

Dated: August 30, 2021              **THE LAW OFFICE OF THAD M. SCROGGINS**

                                               By:    /s/ Thad M. Scroggins
                                                       Thad M. Scroggins, Esq.
                                                       Attorney for Plaintiff,
                                                       ENGAGE BDR, LLC and
                                                       Plaintiff, KENNETH KWAN

10
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2021, I electronically filed the **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court by using the CM/ECF system and that foregoing document is being served on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF:

Paula L. Zecchini (SBN No. 238731)
Harper S. Seldin (pro hac vice to be submitted) COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, WA  98104
Telephone: (206) 373-7213
Facsimile: (206) 455-8251
Email:       pzecchini@cozen.com
             hseldin@cozen.com

*Attorneys for Defendant GODADDY INC.*

Dated: August 30, 2021          THE LAW OFFICE OF THAD M. SCROGGINS

                                By:   */s/ Thad M. Scroggins*
                                      Thad M. Scroggins, Esq.
                                      Attorney for Plaintiff,
                                      ENGAGE BDR, LLC and
                                      Plaintiff, KENNETH KWAN